Filed 6/1/17

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | |
| | ) | S223763 |
| v. | ) | |
| | ) | Ct.App. 4/2 E059859 |
| MARIO ALBERTO GONZALEZ, | ) | |
| | ) | Riverside County |
| Defendant and Respondent. | ) | Super. Ct. No. INF1300854 |
| _____ | ) | |

Under Penal Code section 422, it is a crime to threaten infliction of great bodily injury or death on another "with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat . . . ." (Pen. Code, § 422, subd. (a).)  The question here is whether defendant's conduct, which included a hand gesture unaccompanied by words or sound, qualifies as a "statement, made verbally."  We conclude it does not and reverse the Court of Appeal's contrary judgment.

## I.  FACTS AND PROCEDURE

On March 24, 2013, an off-duty Cathedral City police officer was dining with friends at a restaurant in Indio.[1]  Walking to the restroom, he saw Melanie Franco, a former high school classmate, sitting nearby.  He smiled; she smirked in response.  Returning to his table, he noticed that Franco's several male

---

[1] The facts are taken from the preliminary hearing.  An investigating officer testified as to the victims' accounts of the incident.  (See Cal. Const., art. I, § 30, subd. (b); *People v. Batts* (2003) 30 Cal.4th 660, 670.)

companions displayed gang tattoos and stared at him in a "confrontational way." One of those men was defendant Mario Alberto Gonzalez, who had "JT" tattooed on the back of his head. Franco's companions eventually left while continuing to stare menacingly. The officer's group sat at a window booth facing the parking lot. The tattooed men got into an SUV, with defendant in the front passenger seat. As the vehicle drove past the restaurant window, defendant made a "JT" hand sign and manually simulated a pistol pointed upward. The officer recognized the "JT" sign as a symbol of the Jackson Terrace gang, and considered the pistol gesture as a threat. The SUV stopped in front of the restaurant. The SUV driver then ran his finger across his neck, made a "JT" hand sign, and simulated a gun, which he pointed at the officer's group. The officer and some of his companions were frightened by the gestures.

Defendant was held to answer on five counts of making a criminal threat, one count for each person at the officer's table. Other allegations included gang enhancements and the service of three state prison priors.[2] Defendant sought to set aside the criminal threats counts.[3] He argued that, because his hand gestures were not a statement "made verbally," they could not constitute criminal threats as defined by Penal Code section 422.[4] The court agreed and dismissed the criminal threat allegations.[5] Defendant pled guilty to a separate misdemeanor. The People sought review and the Court of Appeal reversed the dismissal.

---

[2] Penal Code sections 186.22, subdivision (b)(1), 667.5, subdivision (b).
[3] Penal Code section 995, subdivision (a)(2)(B).
[4] Subsequent references are to the Penal Code unless noted.
[5] The court dismissed two other counts not at issue here.

## II. DISCUSSION

As noted, this case involves an appeal after the trial court granted defendant's motion under section 995 to set aside the criminal threats counts. "[I]n proceedings under section 995 it is the magistrate who is the finder of fact; the superior court has none of the foregoing powers, and sits merely as a reviewing court; it must draw every legitimate inference in favor of the information, and cannot substitute its judgment as to the credibility or weight of the evidence for that of the magistrate. [Citation.] On review by appeal or writ, moreover, the appellate court in effect disregards the ruling of the superior court and directly reviews the determination of the magistrate . . . ." (*People v. Laiwa* (1983) 34 Cal.3d 711, 718; see *People v. Konow* (2004) 32 Cal.4th 995, 1025.) "Insofar as the Penal Code section 995 motion rests on issues of statutory interpretation, our review is de novo." (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1072.) " ' "As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning." ' " (*People v. Scott* (2014) 58 Cal.4th 1415, 1421.) "[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible." (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 632; see *People v. Gonzalez* (2014) 60 Cal.4th 533, 537.)

Section 422, subdivision (a) reads: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that *the statement, made verbally, in writing, or by means of an electronic communication device*, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to

3

convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison." (Italics added.)

Because defendant's gestures were not conveyed "in writing" or "by means of an electronic communication device," the sole issue is whether they may constitute a statement "made verbally." (§ 422, subd. (a).) Dictionary definitions of "verbal" include "[o]f, relating to, or associated with words," and "[e]xpressed in spoken rather than written words; oral." (American Heritage Dict. (4th ed. 2000) p. 1910; see also Webster's 3d New Internat. Dict. (2002) p. 2542; Random House Webster's College Dict. (2001) p. 1451.) Indeed, one dictionary cautioned in a usage note: "*Verbal* has been used since the 16th century to refer to spoken, as opposed to written, communication, and the usage cannot be considered incorrect. But because *verbal* may also mean 'by linguistic means,' it may be ambiguous in some contexts." (American Heritage Dict., *supra*, at p. 1910.) "Oral" is defined as "uttered by the mouth or in words: SPOKEN." (Webster's Collegiate Dict. (11th ed. 2003) p. 872.) While the terms "verbal" and "oral" are closely related, they remain distinct. "Verbal" connotes the use of words. "Oral" means spoken in the sense that the mouth is used to articulate words or sounds.

Defendant contends that his gestures did not qualify as a statement "made verbally" because he neither made a statement orally nor did he use words. The People argue that "made verbally" does not require an element of sound, and defendant's gestures were a "clear example of verbal communication" because "a word can be spoken without sound."

As we explain further below, we need not resolve here whether "made verbally" requires either the use of words or an oral utterance. Because

4

defendant's conduct here involved *neither*, we conclude it falls outside the purview of section 422.

### A. "Statement" Under Section 422 Excludes Nonverbal Conduct

The Legislature originally enacted section 422 in 1977. The statute proscribed threats made "with intent to terrorize another," defining "terrorize" as creating "a climate of fear and intimidation by means of threats or violent action causing sustained fear for personal safety in order to achieve social or political goals." (Former §§ 422, 422.5; Stats. 1977, ch. 1146, § 1, pp. 3684-3685.) After these provisions were struck down as unconstitutionally vague, the Legislature repealed them. (*People v. Mirmirani* (1981) 30 Cal.3d 375, 382-388; see *People v. Toledo* (2001) 26 Cal.4th 221, 228-229; Stats. 1987, ch. 828, § 28, p. 2587.)

Penal Code section 422 was reenacted in 1988 as part of the California Street Terrorism Enforcement and Prevention Act. As relevant here, the provision applied to "[a]ny person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement is to be taken as a threat . . . ." (Stats. 1988, ch. 1256, § 4, pp. 4184-4185.) Although Penal Code section 422 did not otherwise define "statement," the Evidence Code defines the term as "(a) oral or written verbal expression or (b) nonverbal conduct of a person intended by him as a substitute for oral or written verbal expression." (Evid. Code, § 225.) This definition, which has been part of our Evidence Code since its enactment in 1965 (Stats. 1965, ch. 299, § 2, p. 1299), thus includes the actual use of spoken or written words, as well as conduct[6] intended as a substitute for the actual use of words.

---

[6]  "Conduct" is defined as "all active and passive behavior, both verbal and nonverbal." (Evid. Code, § 125.)

In 1998, Penal Code section 422 was amended to insert the language at issue here, requiring a relevant statement to be "made verbally, in writing, or by means of an electronic communication device . . . ." (Stats. 1998, ch. 825, § 3, p. 5161.) The 1998 amendment was part of a bill intended to combat "cyberstalking." A committee report explained: "This bill seeks to make 'cyberstalking' punishable under current harassment and stalking laws. Cyberstalking is a new high-tech version of stalking. At its worst, cyberstalking can become 'real world' stalking, with potentially dangerous and even deadly consequences. Cyberstalking can take the form of threatening, obscene, or hateful e-mail; pages; faxes; and voice mail messages. [¶] Specifically, this bill amends law relating to stalking, terrorist threats, and telephone harassment, as well as the tort of stalking. By adding 'electronic communication' to these code sections, it will not matter if the harasser is capable of carrying out the threat—it will be enough that the target believes the threat to be credible and 'had reasonable fear for his or her safety or the safety of his or her immediate family.' " (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1796 (1997-1998 Reg. Sess.) as amended June 25, 1998, p. 3; see also Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1796 (1997-1998 Reg. Sess.) June 23, 1998, p. 4.) The bill author urged that "[t]here is a growing consensus in California that current stalking and harassment laws need to be expanded to also include electronic communication." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1796 (1997-1998 Reg. Sess.) as amended Mar. 30, 1998; see also Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1796 (1997-1998 Reg. Sess.) as amended Apr. 28, 1998.) In addition to Penal Code section 422, the bill amended Civil Code section 1708.7 (tort of stalking), and Penal Code sections 646.9 (crime of stalking) and 653m (telephone calls with intent to annoy) to cover contact through an

6

electronic communication device. (See Stats. 1998, ch. 825, §§ 2-5, pp. 5160-5165.)

There seems little doubt that the Legislature's 1998 amendment was primarily focused on expanding the reach of Penal Code section 422 to include electronic communications. However, the Legislature's choice to explicitly describe a threat "made verbally" must be given significance. After the amendment, Penal Code section 422's express reference to a statement "made verbally" seems to exclude nonverbal conduct, at least when such a statement is not in writing or made via an electronic communication device.[7] Simply put, the People's position would require us to read "verbally" to include "nonverbally." Yet, as Evidence Code section 225 demonstrates, the Legislature fully understands how to define the reach of a statute more broadly in keeping with its intent. Here, it did not do so.

Indeed, the Legislature faced this very distinction in another statute proscribing threats. Following the 1995 bombing of an Oklahoma City federal building, the Legislature enacted the Hertzberg-Alarcon California Prevention of Terrorism Act, which contained several provisions related to weapons of mass destruction. (See § 11415 et seq.; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 140 (1999-2000 Reg. Sess.) as amended Sept. 2, 1999, pp. 7-8.) Section 11418.5, subdivision (a) criminalized threats "to use a weapon of mass destruction, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal,

_____

[7]   We have no occasion to decide here whether nonverbal symbols sent in writing or by an electronic device would qualify as a threat under section 422.

7

immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety, or for his or her immediate family's safety, which results in an isolation, quarantine, or decontamination effort . . . ." (Stats. 1999, ch. 563, § 1, pp. 3938-3939.) This provision was patterned after, and closely mirrored, the post-1998 version of section 422, including that the statement be "made verbally, in writing, or by means of an electronic communication device." (See Assem. Com. on Public Safety, Analysis of Assem. Bill No. 140 (1999-2000 Reg. Sess.) as amended Feb. 25, 1999, pp. 6-8.)

In 2002, the Legislature amended Penal Code section 11418.5 to expressly include a reference to Evidence Code section 225. Penal Code section 11418.5, subdivision (a) now states in relevant part: "Any person who knowingly threatens to use a weapon of mass destruction, with the specific intent that the statement as defined in Section 225 of the Evidence Code or a statement made by means of an electronic communication device, is to be taken as a threat . . . ." One committee report explained the change: "Existing law *limits* the threat to use a WMD to a verbal or written statement or a statement made by means of an electronic device. This bill *adds* non-verbal conduct or communication by incorporating the definition of 'statement' in the Evidence Code." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1287 (2001-2002 Reg. Sess.) as amended May 7, 2002, pp. 6-7, italics added.) Another committee report observed the bill "amends the WMD credible threat crime to provide that a 'statement' conveying a threat may be any form of communication, including conduct, as described in Evidence Code section 225." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1287 (2001-2002 Reg. Sess.) as amended April 25, 2002, p. M.)

8

The Legislature was made aware that the precise language of Penal Code section 422 at issue here, which appeared verbatim in the prior version of Penal Code section 11418.5, *excluded* nonverbal conduct.  Thereafter, the weapons of mass destruction statute was expanded to include a reference to Evidence Code section 225.  The Legislature declined to make a similar amendment to Penal Code section 422.  In 2000, the Los Angeles County District Attorney sponsored a bill to amend Penal Code section 422 to expressly reference Evidence Code section 225.  According to the sponsor, the bill " 'would correct an unintended narrowing of California's "Terrorist Threat" law that occurred with the passage of SB 1796 (Leslie) of 1998.  As originally enacted, California's "Terrorist Threat" law made it unlawful to make any statement to another person threatening to commit a crime against that person that would result in death or great bodily injury.  The word "statement" was unqualified in California's original "Terrorist Threat" law.  As such, under Evidence Code section 225, threatening statements included those made either (a) orally or in writing or (b) by the non-verbal conduct of a person intended by him as a substitute [for] written expression.  The 1998 amendments of the "Terrorist Threat" law to cover threats made via an "electronic communication device" had the unintended effect of eliminating threats made by nonverbal communication.' "  (Sen. Com. on Public Safety, Rep. on Assem. Bill No. 2650 (1999-2000 Reg. Sess.) as amended May 26, 2000, p. 3.)  The sponsor argued it was important to correct this " 'drafting error' " because " 'many non-verbal threatening gestures, such as the "throat slash," a simulated noose jerk of the neck, or a hand pointing like a gun are often as threatening, or more threatening, than oral or written threats, particularly in gang cases.' "  (*Ibid*.)

It is ordinarily true that " '[w]e can rarely determine from the failure of the Legislature to pass a particular bill what the intent of the Legislature is with respect to existing law.' "  (*People v. Mendoza* (2000) 23 Cal.4th 896, 921.)

9

However, the Legislature's consideration of, and failure to pass, an amendment of Penal Code section 422 to reference Evidence Code section 225, coupled with its *passage* of the very same amendment as to Penal Code section 11418.5 two years later, suggests the Legislature (a) was aware that the "made verbally" language excluded nonverbal conduct, and (b) intended that nonverbal conduct may qualify as a statement under section 11418.5 but not section 422.

The People point to an uncodified portion of the chaptered law containing section 422's 1998 amendment, which stated: "It is the intent of this act to clarify that electronic communications are included in the actions that can constitute the crimes of harassment and stalking. *It is not the intent of the Legislature, by adoption of this act, to restrict in any way the types of conduct or actions that can constitute harassment or stalking.*" (Stats. 1998, ch. 825, § 1, p. 5160, italics added.) An "uncodified section is part of the statutory law" and " 'properly may be utilized as an aid in construing a statute.' " (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 925.) However, it is only an aid. Even assuming this statement was intended to apply to section 422, it cannot be used to contradict the actual words used by the Legislature.

Defendant relies principally upon *People v. Franz* (2001) 88 Cal.App.4th 1426 (*Franz*). Franz went to his girlfriend's house, forced his way inside, and struck her. He also repeatedly struck a visitor, Zook. While a responding officer was speaking to Zook, Franz stood behind the officer. He looked at Zook and his companion, put his index finger in front of his lips, and ran his thumb across his neck. Zook testified he "understood defendant was threatening to 'cut my throat' if Zook said anything to the officer." (*Id.* at p. 1436.) Franz was convicted of two criminal threats counts.

As relevant here, Franz argued on appeal that the evidence was insufficient because he did not make "a verbal, written, or electronic statement, as required by

section 422 . . . ." (*Franz, supra,* 88 Cal.App.4th at p. 1439.)  Citing a dictionary definition, Franz asserted " 'verbal' means consisting of or using words only and not involving action." (*Id*. at p. 1440.)  The People countered that "nonverbal conduct may constitute a 'statement' within the meaning of section 422" and may include "a verbal symbol." (*Ibid*.)  The Court of Appeal agreed with Franz.  It reasoned that "the Legislature knows how to make a statute applicable to nonverbal communication" (*id*. at p. 1440), noting "the Legislature's express inclusion of 'conduct' in the stalking statutes . . ." (*id*. at p. 1441).  *Franz* acknowledged the broader definition of "statement" in Evidence Code section 225 but concluded it did not assist the People:  "Here, as pertinent, section 422 expressly provides that the 'statement' must be 'made verbally.'  The Penal Code definition controls.  Indeed, because Evidence Code section 225 expressly refers to 'nonverbal conduct of a person intended by him as a substitute for oral or written verbal expression,' the Evidence Code statute further demonstrates that the Legislature knows how to define nonverbal conduct, as a means of communication, when it wants to." (*Franz*, at p. 1441.)[8]

The Legislature has elsewhere acknowledged the difference between verbal communication and nonverbal conduct.  For example, the stalking statute defines a "credible threat" as "a verbal or written threat, including that performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct." (§ 646.9, subd. (g).)  The offense of threatening a public

---

[8]     *Franz* also suggested that "made verbally" under section 422 required proof that "defendant orally made some noise or sound that was capable of conveying meaning." (*Franz, supra,* 88 Cal.App.4th at p. 1442.)  As noted *ante*, we need not decide here whether "made verbally" requires the making of a sound or use of words as defendant's conduct here involved neither.

11

official similarly defines a threat as "a verbal or written threat or a threat implied by a pattern of conduct or a combination of verbal or written statements and conduct." (§ 76, subd. (c)(5).) Indeed, the Legislature considered both the criminal threats and stalking statutes together as the 1998 cyberstalking bill amended both provisions.

In sum, we conclude that a threat made through nonverbal conduct falls outside the scope of section 422 as currently written. This conclusion gives significance to the Legislature's use of the phrase "made verbally," as well as the language and legislative history of section 422 and related provisions pertaining to threats and threatening conduct.

## B. Application to This Case

The People argue that defendant's gun-to-the-sky gesture "was actually a prolonged course of conduct that escalated over several minutes, involved multiple gestures, and clearly communicated his non-audible verbal threat to harm the victims in this case." The People assert that "when the entirety of respondent's behavior is analyzed, respondent's actions were undoubtedly threatening." We have no doubt that defendant's conduct could reasonably be construed as threatening. However, section 422 requires a specific type of threat, one made in the form of a statement "made verbally, in writing, or by means of an electronic communication device." As discussed, even assuming "made verbally" could mean either made orally or made through words, defendant's conduct here involved neither. For the reasons discussed, nothing in logic or reason allows us to interpret "made verbally" to include *nonverbal* conduct.

Although the People suggest that American Sign Language recognizes a similar hand gesture to that employed by defendant as the symbol for "gun," the suggestion does not assist them. Nothing in the record below demonstrated that

12

the defendant actually used the American Sign Language sign for "gun." While the conduct was clearly threatening, the threat was not "made verbally" as required by section 422.**9** As the high court has stated with respect to symbolic speech in the First Amendment context, "[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." (*United States v. O'Brien* (1968) 391 U.S. 367, 376; see *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.* (2006) 547 U.S. 47, 65-66.) Similarly here, defendant's conduct did not constitute a verbal communication merely because he intended to convey an idea through his conduct.

Our conclusion is based on the manner in which the statute is drafted. Should the Legislature choose to include symbolic gestures within the ambit of section 422, it remains free to do so.

---

**9** The concurring opinion suggests defendant's "JT" hand sign was verbal because it "unmistakably communicated the name of defendant's gang" and it related to and was " 'associated with [the] words' Jackson Terrace." (Conc. opn. of Werdegar, J. at p. 1.) Although the record reflects that the officer, through his experience, recognized the hand sign as a symbol of the Jackson Terrace gang, there was no testimony describing the actual gesture used. Accordingly, there is no way to determine that the gang sign was any different from the gun or throat-slash gesture. For the reasons noted here and in the concurrence, we need not resolve definitively the various ways in which a gesture may be proven to constitute a statement "made verbally."

## III.  DISPOSITION

We reverse the Court of Appeal's judgment.

**CORRIGAN, J**.

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

**CONCURRING OPINION BY WERDEGAR, J.**

I generally concur in the court's opinion, including the conclusion that "a threat made through nonverbal conduct falls outside the scope of [Penal Code] section 422 as currently written." (Maj. opn., *ante*, at p. 12.)

Whether or not defendant in fact made a verbal threat, however, seems debatable. Defendant's hand signs for "gun" and "throat slashing" were pantomimes — imitative gestures or manual simulations rather than verbal communications. But defendant's "J.T." hand sign unmistakably communicated the name of defendant's gang — "Jackson Terrace" — to the officer, who was familiar with the sign from having grown up in Indio, the gang's territory. That is, the J.T. hand sign may be considered verbal because it "relat[es] to" and is "associated with [the] words" "Jackson Terrace." (American Heritage Dict. (4th ed. 2000) p. 1910.) That arguably verbal information, read together with defendant's weapon gestures, conveyed a specific and immediate threat. Nothing in Penal Code section 422 (hereafter section 422) requires that the entirety of a threat be verbal. To illustrate, the verbal statement, "I want your money," of itself harmless, is a threat when the speaker displays a weapon. (Cf. *In re George T.* (2004) 33 Cal.4th 620, 635 ["A communication that is ambiguous on its face may nonetheless be found to be a criminal threat if the surrounding circumstances clarify the communication's meaning."].)

The People, however, have not argued that defendant's J.T. hand sign was verbal in a way that distinguishes it from his gestures depicting weapons. Instead, the People argue more broadly that section 422 encompasses "nonaudible behavior" that "adequately communicate[s]" a threat. The court's opinion explains why the People's proposed interpretation lacks merit. Because it lacks merit, and because the People have not made the argument I have outlined, I agree with the court's decision to reinstate the superior court's order dismissing the counts charging defendant with violations of section 422. As we have observed, " ' "[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." ' " (*People v. Sandoval* (2015) 62 Cal.4th 394, 445, quoting *Greenlaw v. United States* (2008) 554 U.S. 237, 244.) Nevertheless, nothing in the court's opinion prevents the People from arguing in a future case, should the facts support the argument and the People choose to make it, that conduct actually intended and understood to convey verbal information violates section 422. (See, e.g., maj. opn., *ante*, at pp. 13–14 [concerning American Sign Language].)

**WERDEGAR, J.**

2

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Gonzalez

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 232 Cal.App.4th 151
**Rehearing Granted**

_____

**Opinion No.** S223763
**Date Filed:** June 1, 2017

_____

**Court:** Superior
**County:** Riverside
**Judge:** William S. Lebov*

_____

**Counsel:**

Paul E. Zellerbach and Michael A. Hestrin, District Attorneys, and Kelli M. Catlett, Deputy District Attorney, for Plaintiff and Appellant.

Jennifer A. Gambale, under appointment by the Supreme Court, for Defendant and Respondent.

*Retired judge of the Yolo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Kelli M. Catlett
Deputy District Attorney
3960 Orange Street
Riverside, CA  92501
(951) 955-5400

Jennifer A. Gambale
111 Pacifica, Suite 120
Irvine, CA  92618
(949) 825-6533