Filed 12/2/20  P. v. Sly CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E073972 |
| v. | (Super.Ct.No. FSB1203896) |
| CHRISTOPHER JOSEPH SLY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Katrina West, Judge.  Affirmed.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Lynne G. McGinnis, and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2016, defendant and appellant Christopher Joseph Sly pleaded guilty to one count of attempted murder. On February 29, 2019, defendant filed a petition for resentencing pursuant to Penal Code section 1170.95[1] based on the changes that Senate Bill No. 1437 (2017-2018 Reg. Sess.), effective January 1, 2019 (Sen. No. 1437), made to the murder statutes (Petition). The Petition was summarily denied by the trial court without a hearing, finding that Sen. No. 1437 and section 1170.95 were not applicable to attempted murder.

Defendant appeals, contending that this court should reverse the trial court's order denying the Petition based on the ground that Sen. No. 1437 and section 1170.95 should be interpreted to apply to attempted murder under the natural and probable consequences theory.

**FACTUAL AND PROCEDURAL HISTORY**

A.     SUMMARY OF FACTS AND PLEA

The facts are taken from the preliminary hearing held on December 13, 2012.

Defendant was an active member of the Rolling 40s gang. On August 6, 2012, defendant was with his girlfriend, Amalia White, in her car. Defendant drove White's car to an apartment complex in San Bernardino and picked up Darrell Pratt, also known as Bosco, and Tydrick Carr, also known as Baby Beast. Carr was an active Rolling 30s gang member. Pratt and Carr advised defendant that someone had robbed Pratt's cousin (Cousin) down the street at the Woodridge Apartments and they wanted to look for the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

people who did it. Defendant drove them all to find the car they believed belonged to the perpetrators. Once they located the car, a white Chevy Caprice, they followed it to a nearby McDonald's restaurant and parked nearby waiting for the occupants of the Caprice to leave the McDonalds.

Defendant and the others decided to return to the Woodridge Apartments to get Cousin. Cousin and another occupant followed defendant and the others back to the McDonalds in a separate car. The two cars waited for the Caprice to drive out of the McDonalds. Once the Caprice drove out of the McDonalds, the two cars followed it.

The Caprice stopped at a gas station and two people got out of the vehicle to pump gas. Pratt and Carr got out of White's vehicle, and Cousin also got out of his car. They all had guns. Defendant told White, "These [N*****] are going to get what they deserve." Pratt ducked down behind a car, Cousin ducked behind a van and Carr stood across the street. The Caprice exited the gas station and drove down the street. Pratt and Carr fired numerous shots at the Caprice. The Caprice crashed into a wall.

Pratt, Carr, and Cousin all jumped into the backseat of White's car. As they drove past the Caprice, Pratt and Carr continued to fire their guns at the Caprice. Defendant yelled from White's car, "Neighborhood." The driver of the Caprice had been shot in the head and was unresponsive when officers arrived at the scene, but he survived. There were two other occupants in the Caprice who ran away after the crash. Defendant did not have a gun that day and he did not shoot anyone.

3

A gang expert testified that the Rolling 30s and Rolling 40s were active street gangs and were both part of a larger gang called the Neighborhood Crips. In the gang expert's opinion, Carr and defendant were active gang members, and the crimes were committed on behalf of the gang.

Defendant was charged in an information filed on December 20, 2012, with three counts of attempted willful, deliberate and premeditated murder (§§ 664, 187, subd. (a)). Several enhancements under section 12022.53 were charged against defendant for a principal personally and intentionally using a firearm during the commission of all three counts. It was additionally alleged for all three counts that the crimes were committed for the benefit of and at the direction of a criminal street gang (§ 186.22, subd. (b)(1)(C)). Defendant was additionally charged with shooting at an occupied motor vehicle (§ 246), with additional principal armed allegations pursuant to section 12022.53 and gang allegations (§ 186.22, subd. (b)(1)(B)), and with street terrorism (§ 422). It was alleged as to all counts that defendant had suffered a prior serious and violent felony conviction (§§ 667, subds. (a)(1), (b)-(i), 1170.12, subds. (a)-(d)).

On March 18, 2016, defendant entered a guilty plea to one count of attempted murder within the meaning of sections 664 and 187; to a principal armed allegation (§ 12022, subd. (b)(1)); and admitted to having suffered a prior strike conviction (§§ 667, subd. (b)-(i), 1170.12, subds. (a)-(d)). Defendant was sentenced to 15 years to be served in state prison. The remaining charges were dismissed in the interests of justice.

4

B.    DEFENDANT'S PETITION

On February 21, 2019, defendant filed the Petition.  Defendant used a form and marked the box that he pled guilty to first or second degree murder because if he had gone to trial he believed he could have been found guilty of first or second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine.  He also alleged he could not now be convicted of first or second degree murder because of the changes to the definitions of murder under sections 188 and 189.

On April 18, 2019, the People filed a response to the Petition.  The People moved to strike the Petition.  The People alleged that Sen. No. 1437 was unconstitutional.  They also requested that the trial court take judicial notice of the records in *People v. Christopher Sly*, San Bernardino Superior Court case No. FSB1203896-1.  On May 3, 2019, defendant was appointed counsel, who was given 60 days to file any documents or response.

C.    RULING ON THE PETITION

The Petition was heard on October 4, 2019.  Defendant was not present but was represented by counsel.  The trial court noted that there were two published cases— *People v. Lopez* (2019) 38 Cal.App.5th 1087 (*Lopez*), review granted November 13, 2019, S258175, and *People v. Munoz* (2019) 39 Cal.App.5th 738 (*Munoz*), review granted November 26, 2019, S258234—from the court of appeal finding that section 1170.95 does not apply to attempted murder.  The Petition was denied without prejudice.

**DISCUSSION**

Defendant contends the trial court erred by dismissing the Petition based on his claim that although attempted murder is not enumerated in section 1170.95 or Sen. No. 1437, the Legislature intended that it apply to attempted murder. Whether section 1170.95 applies to attempted murder will ultimately be decided by the California Supreme Court. We follow the reasoning in *Lopez* and *Munoz* and find section 1170.95 and Sen. No. 1437 do not apply to attempted murder.

"[Sen. No. 1437] modified California's felony murder rule and natural and probable consequences doctrine to ensure murder liability is not imposed on someone unless they were the actual killer, acted with the intent to kill, or acted as a major participant in the underlying felony and with reckless indifference to human life." (*People v. Cervantes* (2020) 46 Cal.App.5th 213, 220.) Sen. No. 1437 added section 189, subdivision (e), which modified first degree felony murder, and provides that when "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

6

Sen. No. 1437 also added section 188, subdivision (a)(3), which redefined malice. It provides, "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Hence, "[Sen. No. 1437] eliminates aider and abettor liability for murder under the natural and probable consequences doctrine." (*Lopez, supra*, 38 Cal.App.5th at p. 1092.)[2]

Section 1170.95 provides the "exclusive means of obtaining relief" for eligible defendants to have their murder convictions vacated after Sen. No. 1437. (*People v. Cervantes, supra*, 46 Cal.App.5th at p. 220.) Section 1170.95 states, "(a) A *person convicted of felony murder or murder* under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's *murder* conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶]  (1)  A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a *theory of felony murder or murder* under the natural and probable consequences doctrine.  [¶]  (2)  The petitioner was convicted of *first degree or second degree murder* following a trial . . . . [¶]  (3)  The petitioner could not be convicted of *first or second degree murder* because of changes to Section 188 or 189 made effective January 1, 2019."  (Italics added.)

---

[2] We cite cases that have been granted review, including *Lopez* and *Munoz*, only for persuasive value and not as binding precedent. (Cal. Rule of Court, Rule 8.1115(e)(1).)

Section 1170.95, subdivision (c) provides "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." "If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may deny the petition. [Citation.] If, however, a determination of eligibility requires an assessment of the evidence concerning the commission of the petitioner's offense, the trial court must appoint counsel and permit the filing of the submissions contemplated by section 1170.95." (*People v. Smith* (May 15, 2020) 49 Cal.App.5th 85, 92, fn. omitted, review granted July 22, 2020, S262835.)

Here, the trial court determined that the Petition did not entitle defendant to relief on its face because he had entered a guilty plea to attempted murder, which is not enumerated in section 1170.95, relying on *Lopez* and *Munoz*. As such, we must determine whether the statute can be construed to include attempted murder. Such review is de novo. (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)

"Our role in construing a statute is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. [Citation.] Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning and construing them in context. [Citation.] If the plain language of the statute is clear and unambiguous, our inquiry ends, and we need not embark on judicial construction." (*People v. Johnson* (2002) 28 Cal.4th 240, 244.)

8

Based on the plain language of Sen. No. 1437 and section 1170.95, they only apply to murder convictions. Section 1170.95 specifically only uses the terms "convicted of felony murder or murder." (§ 1170.95, subd. (a).) As for Sen. No. 1437, in *Lopez*, the court found "[T]here is nothing ambiguous in the language of SB 1437, which, in addition to the omission of any reference to attempted murder, expressly identifies its purpose as the need 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.] Had the Legislature meant to bar convictions for attempted murder under the natural and probable consequences doctrine, it could easily have done so." (*Lopez, supra*, 38 Cal.App.5th at pp. 1104.) It further held, "The Legislature's obvious intent to exclude attempted murder from the ambit of the SB 1437 reform is underscored by the language of new section 1170.95, . . . Section 1170.95, subdivision (a), authorizes only those individuals 'convicted of felony murder or murder under a natural and probable consequences theory' to petition for relief; and the petition must be directed to 'the petitioner's murder conviction.' " (*Id.* at pp. 1104-1105.)

Based on the plain language of the statute, the trial court properly determined that the Petition did not present a prima facie case entitling defendant to relief as he had been convicted of attempted murder.

In *Lopez* and *Munoz*, the courts also concluded that the legislative history did not support that the legislation was intended to apply to attempted murder. (*Lopez*, *supra*, 38 Cal.App.5th at pp. 1104-1106; *Munoz*, *supra*, 39 Cal.App.5th at pp. 753-760.)

In *Lopez*, the court concluded that the "Legislature's obvious intent to exclude attempted murder from the ambit of the SB 1437 reform" based both on the plain language of the statute and the fact that the Legislature repeatedly referred to only first and second degree murder. (*Lopez*, *supra*, 38 Cal.App.5th at p. 1105.) The court in *Lopez* noted that in discussing the fiscal impact of Sen. No. 1437, the Legislature referred to only those serving prison sentences for first and second degree murder. (*Ibid.*) The *Munoz* court concluded, in reviewing the legislative history, that "all indications are that the exclusion of attempted murder was intentional." (*Munoz*, *supra*, 39 Cal.App.5th at p. 757.) It also concluded that excluding attempted murder did not result in an "absurdity" because the Legislature reasonably could limit Sen. No. 1437 to murder based on the different sentences for murder and attempted murder. (*Id.* at pp. 757-758.)

Other appellate courts have concluded that despite attempted murder not being enumerated in Sen. No. 1437, the legislation must be interpreted to include attempted murder in addressing attempted murder convictions that were pending on appeal. (See *People v. Sanchez* (2020) 46 Cal.App.5th 637, 644, review granted March 16, 2020, S261768 ["Limiting SB 1437's malice imputing prohibition to murder" incentivizes murder]; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1015, review granted March 11, 2020, S259948 ["Because the crime of attempted murder is tethered to the murder statutes, i.e., it does not exist without them, there is no logical basis for applying section

188 to murder and treating the crime of attempted murder as being subject to an impliedly different and unspecified rule of law"]; *People v. Larios* (2019) 42 Cal.App.5th 956, 966, review granted February 26, 2020, S259983 ["[T]he natural and probable consequences doctrine is no longer a viable theory of accomplice liability for attempted murder . . . since 'implied malice cannot support a conviction of an attempt to commit murder' [citation], the current version of section 188 requires proof the aider and abettor acted with the intent to kill while aiding and abetting the target offense"].)

However, in *Larios* and *Medrano*, the courts found that even if Sen. No. 1437 applies to attempted murder convictions on direct appeal, based on the unambiguous language in section 1170.95, a defendant convicted of attempted murder could not file a petition pursuant to section 1170.95. (*People v. Larios*, *supra*, 42 Cal.App.5th at pp. 969-970; *People v. Medrano*, *supra*, 42 Cal.App.5th at pp. 1017-1018.)[3] These courts concluded, "[T]here is a rational basis for the Legislature's decision to grant relief pursuant to section 1170.95 only to murder convictions and exclude attempted murder convictions based on judicial economy and the financial costs associated with reopening both final murder and final attempted murder convictions." (*People v. Larios*, *supra*, 42 Cal.App.5th at p. 970; *People v. Medrano*, *supra*, 42 Cal.App.5th at p. 1018.) Defendant insists that these courts erred by concluding as such. We agree with the reasoning of these cases and find that section 1170.95 does not allow a defendant who has been convicted of attempted murder to apply for relief.

---

[3] The court in *Sanchez* did not address the issue of section 1170.95. (*People v. Sanchez*, *supra*, 46 Cal.App.5th at pp. 642-645.)

11

## DISPOSITION

We affirm the trial court's order denying defendant's petition for resentencing pursuant to Penal Code section 1170.95.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

FIELDS
J.