Filed 7/24/24  P. v. Carpio CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL STEVEN CARPIO,<br><br>    Defendant and Appellant. | B328636<br><br>(Los Angeles County<br>Super. Ct. No. LA073936) |

APPEAL from an order of the Superior Court of Los Angeles County, Martin L. Herscovitz, Judge.  Affirmed.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising

Deputy Attorney General, and Amanda V. Lopez, Deputy Attorney General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Michael Steven Carpio (defendant), who with his brother and codefendant Anthony Carpio was convicted of second degree murder, appeals the trial court's denial of his petition for relief under Penal Code section 1172.6.[1]  Following an evidentiary hearing, the court found, beyond a reasonable doubt, that defendant directly aided and abetted an implied malice murder. Defendant does not challenge the sufficiency of the evidence to support that finding.  Instead, he argues the trial court was required to consider the fact that he was only 19 years old at the time of the offense.  Given the evolving developments of law in this area, we agree the court erred in not considering this factor. However, any such error was harmless in light of the evidence and circumstances of the murder.  We accordingly affirm.

**FACTS AND PROCEDURAL BACKGROUND**

I.      **Facts**

A.      *The underlying crime*

One afternoon in April 2013 after school let out, defendant—then age 19—and his younger brother Anthony walked onto the campus of Cleveland High School in Reseda, California.  The brothers "went up" to Kevin Orellana (Orellana), who was standing on one of the handball courts.  Defendant made

---

[1]      All further statutory references are to the Penal Code unless otherwise indicated.

Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). We therefore refer to the law formerly codified at section 1170.95 as section 1172.6.

2

the archetypical gang challenge—demanding to know, "Where you from?" Defendant admitted he was "hitting up" and "banging on" Orellana. Orellana said something in response that led defendant to believe Orellana was associated with a rival street gang. Defendant threw a punch, and Anthony soon joined in the three-way fistfight. Orellana fought back, taking on both brothers for a time and, as he gained the upper hand, concentrating first on defendant, then Anthony. At some point when Orellana was fighting defendant and his back was to Anthony, Anthony pulled a knife and stabbed Orellana multiple times in the head, neck, and left and right torso. As the brothers fled, Anthony dropped the knife. Defendant picked it up, cleaned it off, and then tossed it away before the brothers ran to a waiting "getaway" minivan.

### B. *Charging, conviction, and appeal*

The People charged defendant with first degree murder (§ 187, subd. (a)), and further alleged that the murder was committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(4)). Following trial, a jury convicted defendant of second degree murder, and the trial court sentenced him to state prison for 15 years to life.[2]

We affirmed the conviction on appeal. (*People v. Carpio et al.* (Oct. 27, 2016, B261698) [nonpub. opn.].)

## II. Procedural Background

On December 23, 2020, defendant filed a petition seeking resentencing under section 1172.6. After the trial court

---

[2] Anthony was also convicted of second degree murder and received a sentence of 16 years to life, which included one year for a weapon-use enhancement.

3

appointed counsel for defendant, the People filed an opposition, and defendant filed a brief in support of his petition.

On December 9, 2022, the trial court—the same judge who presided over the original trial—held an evidentiary hearing on defendant's petition. At the beginning of the hearing, the court admitted into evidence the record from defendant's direct appeal, which included the trial transcripts, a conversation between the brothers in the getaway minivan that was inadvertently recorded as a voicemail, and defendant's statement to the police. The People did not present any new evidence. Defendant testified on his own behalf. He testified that there was no plan to attack Orellana that day; his recollection of events is unclear because he was "dazed" from being hit by Orellana; he was on "meth" and had not slept for days and was not thinking "straight"; he did not know Orellana had been stabbed until he got back to the car; and he does not remember what he told the police.

After entertaining oral argument, the court denied defendant's petition, finding defendant was guilty beyond a reasonable doubt of second degree murder under the theory that he directly aided and abetted Anthony's implied malice murder. The court made specific factual findings supporting its determination that defendant personally acted with reckless indifference to human life (and hence acted with implied malice), including that (1) defendant issued a gang challenge to Orellana; (2) defendant threw the first punch; (3) defendant punched Orellana with such force that he "broke [his] hand"; (4) although defendant was feeling weak at that time, he was willing to initiate this fight with Orellana because he knew Anthony was nearby and sometimes carried a knife; (5) when Orellana knocked defendant down, Anthony rushed in to join the fight; (6)

4

defendant re-joined the fight to "deliberately distract[] Orellana and mak[e] it impossible for [Orellana] to defend himself while being stabbed by Anthony"; and (7) defendant grabbed the knife that Anthony discarded, cleaned it, and then disposed of it.

Defendant filed this timely appeal.

## DISCUSSION

Defendant's sole argument on appeal is that the trial court erred in not considering his relative youth (age 19) at the time of the crime in making its finding that he acted with reckless indifference to human life. Because defendant does not otherwise contest the substantiality of the evidence underlying the trial court's ultimate finding of recklessness or its subsidiary factual findings in support of that ultimate finding, we review the trial court's application of the law de novo. (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)

At this point in time, trial courts are obligated to consider a defendant's relative youth (that is, whether the defendant is 26 years old or younger) as one of many circumstances in assessing whether a defendant has acted with reckless indifference and hence acted with implied malice. (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1091-1093 & 1088, fn. 7; *People v. Oliver* (2023) 90 Cal.App.5th 466, 488-489 (*Oliver*); *People v. Pittman* (2023) 96 Cal.App.5th 400, 416-417 (*Pittman*).) Although there is no requirement that a trial court expressly identify the circumstances it considers when making findings regarding a defendant's intent, and although appellate courts generally presume that trial courts follow the law in the absence of affirmative evidence to the contrary (*In re Julian R.* (2009) 47 Cal.4th 487, 499), the law at the time of the evidentiary hearing in this case labeled relative youth an "appropriate" or "relevant"

5

factor—but not a mandatory one (*People v. Keel* (2022) 84 Cal.App.5th 546, 558 ["relevant"]; *In re Harper* (2022) 76 Cal.App.5th 450, 466-470 ["appropriate" but declining to decide whether youth "*must* be considered"]; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 987, 990-991 ["relevant"]; *In re Moore* (2021) 68 Cal.App.5th 434, 453-454 ["relevant"]; see also *People v. Harris* (2021) 60 Cal.App.5th 939, 944-945 [relevant to major participation element]).  Because we cannot presume that the trial court here followed a mandatory obligation to consider relative youth that did not exist at the time of the hearing in this case, and because the parties and the court otherwise did not mention defendant's youth, we are required to conclude that the court did not consider defendant's relative youth and erred in failing to do so.  (Accord, *Jones*, at p. 1092.)

However, this error is subject to harmless error analysis, which requires us to ask whether there is a "'reasonable probability'" that, had the trial court considered defendant's youth, it would have made a different factual finding regarding his implied malice under the "specific [and uncontested] circumstances of this case."  (*Pittman, supra,* 96 Cal.App.5th at pp. 417-418; *Oliver, supra,* 90 Cal.App.5th at pp. 488-489 & fn. 8.)  Relative youth is pertinent to recklessness because persons under the age of 26 are (1) "relative[ly] impulsiv[e]" and (2) "vulnerabl[e] to peer pressure."  (*Oliver*, at p. 489.)  Where there is "no evidence that" a defendant's "criminal behavior was motivated by either of these two factors," the trial court's failure to consider relative youth is harmless.  (*Ibid*.)  Here, although defendant came upon Orellana serendipitously (and thus did not seek him out with premeditation), the trial court nevertheless found that defendant intentionally initiated the confrontation,

6

intentionally initiated the fight, knew he had his sometimes-armed younger brother as "backup," intentionally distracted Orellana so Anthony could punch or stab him, and intentionally destroyed evidence of the crime afterwards.  In light of these findings and the level of intentionality they entail, it is not reasonably probable that consideration of defendant's relative youth would have altered the court's finding that defendant acted in a manner that was not recklessly impulsive and hence in a manner consistent with being recklessly indifferent.  (Cf. *Pittman*, at p. 418 [remand warranted where "the trial evidence indicates that [the defendant] and his peers acted impulsively"].)  Further, because defendant was the eldest aggressor involved in the altercation and initiated the entire incident himself, there is no evidence suggesting that his involvement was the product of peer pressure; thus, consideration of defendant's relative youth is also not reasonably likely to alter the court's finding due to the danger of peer pressure.  More broadly, it is well settled that "[t]he fact of youth cannot overwhelm all other factors" (*People v. Mitchell* (2022) 81 Cal.App.5th 575, 595), and our analysis indicates that defendant's relative youth in this case would not reasonably likely overwhelm the trial court's other findings regarding recklessness to such a degree that consideration of defendant's relative youth would lead to a different finding regarding recklessness.

Defendant responds that the trial court's error automatically entitles him to reversal.  He is wrong.  For support, he chiefly cites *People v. Salazar* (2023) 15 Cal.5th 416, 431.  But *Salazar* announced the harmless error test applies when a trial court has been granted newfound sentencing discretion and a reviewing court is trying to assess whether remand is necessary

for the trial court to exercise that discretion; *Salazar* held that remand is required "'unless the record "clearly indicate[s]" that the trial court would have reached the same conclusion "even if it had been aware that it had such discretion."'" (*Id.* at p. 431; accord, *People v. Chambers* (1982) 136 Cal.App.3d 444, 457-458 [addressing whether to remand to trial court to exercise newly conferred sentencing discretion].)  *Salazar* did not purport to displace the general test requiring a reasonable probability of a different outcome when it comes to the erroneous exclusion of pertinent considerations or evidence.[3]

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

---

[3]     In light of our finding that the trial court's error was not prejudicial, defendant's alternative argument that his counsel at the section 1172.6 hearing was constitutionally ineffective also fails because any ineffectiveness in failing to raise the issue of relative youth was equally not prejudicial.  (See *Strickland v. Washington* (1984) 466 U.S. 688, 697.)