Filed 3/12/25

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C099048 |
| Plaintiff and Respondent, | (Super. Ct. No. 62-177455B) |
| v. | |
| DAVID WAYNE GRAY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Placer County, Jeffrey Penney, Judge. Affirmed.

William Safford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant David Wayne Gray guilty of second degree burglary of a vehicle, attempted second degree burglary of a vehicle, conspiracy to commit theft, vandalism, and possession of burglar's tools. The trial court sentenced Gray to an aggregate term of five years four months. On appeal, Gray argues there was insufficient evidence to convict him of second degree burglary of a vehicle and attempted second degree burglary of a vehicle. We will affirm the judgment.

## FACTUAL BACKGROUND

Early one morning in January 2021, Gray and an accomplice stole several rolls and spools of wire out of the secured rear cargo area of M.E.'s pickup truck. The truck was similar to a service truck and the rear cargo area of the truck had a utility body. The sides of the utility body were made of metal compartments. The top of the utility body had a solid deck, which M.E. installed to prevent theft. Two side-by-side doors enclosed the rear cargo area of the truck. A gate hasp, similar to a gate latch, was welded into the truck itself and pinned the doors into the tailgate. A lock secured the doors. M.E. stored several rolls and spools of wire, which were essential for his work as an electrician, in the back of his truck. The night before, M.E. had locked the truck doors and the side compartments. Gray and his accomplice used a tool to cut the gate hasp and the lock to access the back of M.E.'s truck.

Later that day, Gray and his accomplice attempted to steal items out of S.S.'s truck, which S.S. also used for his work as an electrician. Side-by-side utility bins, which stored tools and materials for S.S.'s work, formed the sides of the truck bed. One bar, locked with a padlock, secured all the bins, and each bin was also individually locked. Gray and his accomplice used a tool to cut the padlock on the bar to access the bins, but nothing was stored in the truck that day.

An amended information charged Gray with second degree burglary of a vehicle (Pen. Code,[1] § 459; count one), grand theft (§ 487, subd. (a); count two), attempted second degree burglary of a vehicle (§§ 459, 664, subd. (a); count three), conspiracy to commit the crime of theft (§§ 182, subd. (a)(1), 484, subd. (a); count four), vandalism (§ 594, subd. (b)(2)(A); count five), and possession of burglar's tools (§ 466; count six). The information also alleged Gray suffered a 2015 prior strike (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) for first degree burglary as to counts one, three, and four and an aggravating circumstance that Gray had served a prior prison term. The trial court declared a mistrial on count two and a jury found Gray guilty of all remaining counts. During bifurcated proceedings, the court found true Gray's prior strike and that Gray served a prior prison term.

Gray filed a *Romero*[2] motion, which the trial court denied at sentencing. The court imposed an aggregate term of five years four months, comprised of: the midterm of two years, doubled to four years for the prior strike, for count one and eight months (one-third the midterm), doubled to one year four months, for count four. The court imposed and stayed, pursuant to section 654, the midterm of one year, doubled to two years, for count three and imposed 20 days to run concurrent for each of counts five and six.

## DISCUSSION

On appeal, Gray argues the jury lacked substantial evidence to find him guilty of burglary of a vehicle (count one) and attempted burglary of a vehicle (count three) in violation of the Fourteenth Amendment. He argues that because he removed the locks on the outside of improvised barriers of both trucks, he did not enter the interior of either

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

3

truck within the meaning of section 459.  The People respond that the locked, enclosed cargo areas of the trucks fall within the scope of section 459.  We agree with the People.

"The proper interpretation of a statute is a question of law we review de novo." (*People v. Lewis* (2021) 11 Cal. 5th 952, 961.)  " ' " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.' " ' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)  " '[W]e look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]" [Citation.]  That is, we construe the words in question " 'in context, keeping in mind the nature and obvious purpose of the statute . . . .' [Citation.]" [Citation.]  We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*People v. Arroyo* (2016) 62 Cal.4th 589, 595.)

Section 459 provides in pertinent part:  "Every person who enters any . . . vehicle as defined by the Vehicle Code, when the doors are locked, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."  Gray does not dispute that the truck doors were locked or that he intended to commit a felony.  Rather, his sole contention is one of statutory interpretation:  whether cutting a gate hasp and lock on M.E.'s exterior truck compartment and cutting a padlock on bins attached to S.S.'s truck fall within the meaning of "entering the vehicle" for purposes of section 459. Specifically, he argues that there is no burglary when a defendant enters into and extracts from an *exterior* space upon which the owner of the vehicle has affixed a lock because the exterior compartments are not directly or mechanically connected to the interior of the trucks, so entry into those compartments cannot constitute burglary.

"We must use a liberal and commonsense approach to ascertain if a particular act constitutes a vehicle burglary within the confines of . . . section 459." (*People v. Allen*

4

(2001) 86 Cal.App.4th 909, 915.) "This criminal statute is to be construed flexibly in light of the legislative objective to make it more serious to break into the interior sections of locked cars than merely stealing from them." (*Id.* at p. 916.) When determining whether a defendant has entered a locked vehicle within the meaning of section 459, "courts focus on . . . whether the securing devices, or parts of the vehicle, are broken or destroyed, such as when a window is smashed." (*Allen*, at p. 915.) It is also relevant whether the victim had a "reasonable belief that the belongings were secure" or whether the defendant entered a compartment the victim "knew was openly accessible to the world." (*Id.* at p. 917.)

For example, *People v. Toomes* (1957) 148 Cal.App.2d 465 (*Toomes*) held a defendant illegally enters a "locked" vehicle when the trunk lock, the securing device, is manipulated by a tool, such as a screwdriver. (*Id.* at pp. 465-467.) We find the reasoning in *Toomes* persuasive. In *Toomes*, the owner of a car parked his car, closed the windows, and locked the doors. (*Id.* at p. 465.) The trunk was also locked. (*Ibid.*) Subsequently, the defendants opened the trunk with a tire iron and screwdriver and took a spare tire. (*Ibid.*) On appeal, the defendants contended that section 459's language "doors are locked" referred only to the side doors of an automobile and did not include the cover of the trunk. (*Toomes*, at p. 466.) The *Toomes* court concluded: "In deciding whether it was the intent of the Legislature in using the word 'doors' that it should include only the side doors of a vehicle or also the lid or cover of the trunk, a most satisfactory guide to the legislative intention would be the apparent evils sought to be prevented, namely, the breaking into the interior sections of locked cars. Manifestly, making the offense a felony would tend to minimize the frequency of such unlawful acts." (*Ibid.*) Rather than contemplating whether the trunk was mechanically or directly connected to the passenger area of the car, as Gray suggests should be a primary consideration, the *Toomes* court stated, "It is apparent that that purpose [of the statute] could not be adequately accomplished by denouncing as a felony entry by the breaking or opening of locks of the

5

side doors without also making it an equally serious offense to enter a locked trunk compartment for the purpose of committing theft. The trunks or luggage compartments of automobiles are fitted with locks for the very reason that they furnish a convenient place for the carrying of things of value." (*Ibid.*)

Concluding that breaking into a locked trunk constituted burglary, *Toomes* further stated: "We think the word 'door' better describes the top of a luggage compartment than would any of the words 'top,' 'cover,' or 'lid.' We do not associate hinges and locks with such coverings, but we do associate them with doors. . . . [W]e believe any doubts as to the meaning to be given ['doors'] in construing the statute is removed when effect is given to the purpose of the statute, namely, to make it a more serious offense to break into the interior of a car than to merely steal something from it." (*Toomes*, *supra*, 148 Cal.App.2d at p. 467.)

While Gray attempts to draw a distinction between the exterior and the interior of the trucks, *Toomes* considered the trunk or luggage compartment as the interior of the car. (*Toomes*, *supra*, 148 Cal.App.2d at pp. 466-467.) Here, Gray used tools to forcefully break the locks on the utility trucks' storage compartments and bins that functioned analogously to the trunk of a car. Gray entered the enclosed cargo area of M.E.'s truck by breaking the lock on the gate hasp, which pinned the side-by-side doors into the tailgate and was welded directly into the truck. The lock securing the doors on the rear of the truck gave M.E. the reasonable belief that the things of value he stored in the enclosed cargo area of the truck were secure and not openly accessible to the world. Similarly, the bins that formed the actual sides of S.S.'s utility truck functioned like a trunk of a car. The bins were locked for the very reason that they furnished a convenient place for the carrying of things of value. The locks gave S.S. the reasonable belief that items of value he stored within would be secure. Attempting to gain access to the interior of the bins, Gray used a tool to break the lock securing all the bins. This is no different than the defendants in *Toomes* who used a tool to access the interior of the locked trunk of a car.

6

In keeping with the plain language of section 459 and the legislative intent to treat entry into a locked vehicle more harshly than simple theft, we conclude that Gray's act of cutting the gate hasp and lock on M.E.'s truck constitutes entry into the locked vehicle. Similarly, by cutting the lock to the bar running across the bins on S.S.'s truck, Gray attempted to enter the interior of a locked vehicle. Because Gray does not dispute any other aspect of the sufficiency of the evidence to support his convictions, his due process claim fails.

## DISPOSITION

The judgment is affirmed.

/s/
EARL, P. J.

We concur:

/s/
BOULWARE EURIE, J.

/s/
FEINBERG, J.