Filed 1/23/23  P. v. Dominguez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B320067 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA052901) |
| v. | |
| VINCENT DOMINGUEZ, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County.  Mike Camacho, Judge.  Affirmed.

Maggie Shrout, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Daniel C. Chang and Stefanie Yee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Vincent Dominguez appeals the denial of his petition for resentencing under Penal Code[1] section 1172.6 (former § 1170.95).[2] The superior court determined that appellant is not entitled to section 1172.6 relief as a matter of law because the jury was not instructed on attempted murder based on felony murder or the natural and probable consequences doctrine. Appellant counters that the instructions allowed the jury to convict under some other theory of imputed malice. Therefore, because the record does not conclusively establish appellant is ineligible for resentencing as a matter of law, appellant contends he is entitled to remand for issuance of an order to show cause and an evidentiary hearing in accordance with section 1172.6, subdivisions (c) and (d). We disagree and affirm the denial of appellant's resentencing petition.

### FACTUAL AND PROCEDURAL BACKGROUND[3]

In June 2001, Cheryl Gutierrez, her 16-year-old son, Daniel, and her 12-year-old daughter, Meloney, were in a vehicle heading to a Kentucky Fried Chicken (KFC) restaurant. Daniel was driving the car. As Daniel was about to make a right turn, a black Blazer driven by appellant with Richard Robles (appellant's half brother) in the passenger seat, came from the opposite

---

[1] Undesignated statutory references are to the Penal Code.

[2] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.)

[3] The following facts are drawn from this court's unpublished decision in appellant's direct appeal from his conviction. (*People v. Richard R. Robles et. al.* (Sept. 23, 2003, B155679) [nonpub. opn.] (*Robles*).)

direction and turned left in front of Gutierrez's vehicle. Appellant and Robles stared at the occupants of the Gutierrez car as they turned. (*Robles*, *supra*, B155679.)

Daniel drove behind the Blazer until it pulled into a driveway. Robles motioned to Gutierrez to follow, but fearing for her family's safety, Gutierrez told Daniel to keep driving straight. The Blazer pulled out of the driveway and as it followed the Gutierrez car, Robles was making gang signs and yelling out the window. (*Robles*, *supra*, B155679.)

Daniel drove into the KFC parking lot and Gutierrez and her children got out of the car. The Blazer pulled up, blocking the exit. Appellant and Robles yelled out "East Side Bolen," a local street gang, and threw gang signs. Daniel had previously had problems with the East Side Bolen gang because he had been asked to join and refused. However, Daniel had never seen appellant or Robles before. (*Robles*, *supra*, B155679.)

Robles jumped out of the passenger seat of the Blazer, threw gang signs, and yelled, " 'We are the ones that want to kill you.' " He pulled a gun from his waistband and began shooting. A bullet grazed Daniel's leg and he hit the ground. Robles jumped back into the Blazer, and he and appellant left. Gutierrez, Daniel, and Meloney all identified appellant as the driver of the Blazer and Robles as the shooter. (*Robles*, *supra*, B155679.)

Following a jury trial, appellant and Robles were convicted of three counts of attempted murder (§§ 664/187, subd. (a); counts 1–3) and one count of assault with a semiautomatic firearm (§ 245, subd. (b); count 4). The jury found true the allegation that the attempted murders were committed willfully, deliberately and with premeditation (§ 664, subd. (a)). Also as to the

3

attempted murder counts, the jury found the personal firearm use (§ 12022.53, subd. (c)) and criminal street gang allegations true (§ 186.22, subd. (b)(1)).  Appellant was originally sentenced to a term of 35 years to life in state prison.  The sentence was later amended to life with the possibility of parole plus 20 years in state prison.  (*Robles*, *supra*, B155679.)

Appellant filed his petition for resentencing pursuant to section 1172.6 in February 2022.  Without appointing counsel or accepting briefing, the trial court denied the petition on the ground that appellant's convictions for attempted murder were not based on a felony-murder theory or the natural and probable consequences doctrine, and appellant is therefore not entitled to relief as a matter of law.

## DISCUSSION

### Appellant Is Ineligible for Section 1172.6 Relief as a Matter of Law

#### A. *Applicable legal principles*

The Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) in 2018, effectively abolishing the natural and probable consequences doctrine in cases of murder and limiting the application of the felony-murder doctrine.  (Stats. 2018, ch. 1015, § 1, subd. (f); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  With one narrow exception (§ 189, subd. (f)), Senate Bill No. 1437 effectively eliminated murder convictions premised on any theory of imputed malice—that is, any theory by which a person can be convicted of murder for a killing committed by someone else, such as felony murder or the natural and probable consequences doctrine—unless the People also prove that the nonkiller defendant personally acted with the intent to kill or was a major participant who acted with reckless disregard to

4

human life.  (§§ 188, subd. (a)(3) & 189, subd. (e).)  Specifically, the Legislature amended section 188 to require that, when the felony-murder rule does not apply, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."  (§ 188, subd. (a)(3); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).)  Effective January 1, 2022, Senate Bill No. 775 amended section 1172.6 to expand its coverage to individuals convicted of "attempted murder under the natural and probable consequences doctrine."  (§ 1172.6, subd. (a); *People v. Saibu* (2022) 81 Cal.App.5th 709, 747.)

Senate Bill No. 1437 also enacted former section 1170.95 (now § 1172.6), which established a procedure for vacating the murder convictions of defendants who could no longer be convicted of murder because of the amendments to sections 188 and 189. (Stats. 2018, ch. 1015, § 4; *Lewis, supra*, 11 Cal.5th at pp. 957, 959, 971; *Gentile, supra*, 10 Cal.5th at p. 843.)  Section 1172.6, subdivision (c) requires the court to appoint counsel when requested upon the filing of a properly pleaded petition for resentencing.  (*Lewis*, at pp. 963, 966.)  The court must then conduct a prima facie analysis with briefing to determine the petitioner's eligibility for relief, and, if the requisite prima facie showing is made, issue an order to show cause.  (§ 1172.6, subd. (c); *Lewis*, at p. 971; *People v. Nieber* (2022) 82 Cal.App.5th 458, 469–470.)

We review de novo whether the trial court properly denied appellant's section 1172.6 petition without issuing an order to show cause.  (*People v. Coley* (2022) 77 Cal.App.5th 539, 545 (*Coley*); *People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

5

As a preliminary matter, we note that the trial court erred when it failed to appoint counsel and accept briefing from the parties. The error, however, was harmless. In *Lewis*, our Supreme Court held that once a petitioner files a facially sufficient petition under section 1172.6 and requests appointment of counsel, the trial court must appoint counsel before conducting any prima facie review. (11 Cal.5th at p. 963 ["petitioners who file a complying petition requesting counsel are to receive counsel upon the filing of a compliant petition"]; accord, § 1172.6, subd. (b)(3).) Because appellant's section 1172.6 petition is facially sufficient, the trial court erred by summarily denying appellant's petition for resentencing without appointing him counsel.

However, the erroneous failure to appoint counsel for a section 1172.6 petitioner is subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*Lewis*, *supra*, 11 Cal.5th at pp. 957–958 [failure to appoint counsel under § 1172.6, subd. (b)(3) is "state law error only, tested for prejudice under [*Watson*]"], 974; *People v. Daniel* (2020) 57 Cal.App.5th 666, 676, review granted Feb. 24, 2021, S266336, review dism. Dec. 1, 2021).) Thus, the error requires reversal in this case only if appellant can show a reasonable probability that his petition would not have been summarily denied if he had been afforded the assistance of counsel. (*Lewis*, at pp. 972–974; *Daniel*, at p. 676.) Appellant fails to meet this standard if the record of his conviction, which includes the jury instructions, establishes that he is not entitled to relief as a matter of law. (*Daniel*, at p. 678.)

**B.** *Appellant fails to make a prima facie showing of eligibility for relief under section 1172.6, subdivision (c)*

Appellant concedes that no instructions on felony murder or natural and probable consequences were given to the jury in this case. Nevertheless, he contends that the absence of these instructions does not categorically defeat his claim for relief under section 1172.6 because the instructions given supported conviction for attempted murder on a theory of imputed malice. We disagree. Because the jury instructions did not permit the jury to convict appellant of "attempted murder under the natural and probable consequences doctrine" (§ 1172.6, subd. (a)), or any other theory of imputed malice, appellant is ineligible for relief under section 1172.6 as a matter of law. (*Coley, supra,* 77 Cal.App.5th at pp. 542, 548.)

   1. *Because appellant was not convicted of attempted murder under the natural and probable consequences doctrine, he is ineligible for relief*

As amended by Senate Bill No. 775, section 1172.6, subdivision (a) provides: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine,* or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts."

When construing a statute, our fundamental task is to ascertain the Legislature's intent so as to give effect to the law's

7

purpose.  (*Lewis, supra,* 11 Cal.5th at p. 961; *People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141.)  We start by determining whether the language of the statute is ambiguous (*People v. Dieck* (2009) 46 Cal.4th 934, 940), examining its words and giving them a plain and commonsense meaning (*Gonzalez,* at p. 1141).  " ' "If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs." ' " (*Dieck,* at p. 940.)

According to the plain language of section 1172.6, a person convicted of attempted murder is eligible for relief only if that conviction was based on the natural and probable consequences doctrine.  (*Coley, supra,* 77 Cal.App.5th at p. 548 ["Section [1172.6] applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].)  Where, as in this case, the instructions did not permit the jury to convict appellant of "attempted murder under the natural and probable consequences doctrine" (§ 1172.6, subd. (a)), appellant is ineligible for relief under section 1172.6 as a matter of law. (*Coley,* at p. 548 [defendant convicted of attempted murder not entitled to § 1172.6 relief because the jury was not instructed on the natural and probable consequences doctrine]; see also *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied"].)

*2. Appellant was not convicted of attempted murder as an aider and abettor under any theory of imputed malice*

Even if section 1172.6 relief were available for an attempted murder conviction based on some other theory of imputed malice, appellant would still be ineligible because his

8

jury was not instructed on *any* theory of imputed malice. Nevertheless, appellant parses isolated phrases in the jury instructions to argue that the instructions given in this case permitted the jury to impute malice to him. We disagree: Reading the instructions as a whole, we find the only theory on which appellant's jury was instructed was direct aiding and abetting of attempted murder, which does not qualify for section 1172.6 relief.

Specifically, the jury in this case was instructed that to prove attempted murder, each of the following elements must be proved: "1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2. The person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." (CALJIC No. 8.66.)

The jury was further instructed that "[a] person aids and abets the commission or attempted commission of a crime when he or she, [¶] 1. With knowledge of the unlawful purpose of the perpetrator and [¶] 2. With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] 3. By act or advice aids, promotes, encourages or instigates the commission of the crime." (CALJIC No. 3.01.)

Two other instructions ensured that in order to convict appellant of aiding and abetting the attempted murders, the jury had to consider appellant's guilt separately from Robles's, and also find that appellant himself harbored the requisite intent to kill. (CALJIC No. 17.00 ["You must decide separately whether each of the defendants is guilty or not guilty"]; CALJIC No. 3.31 ["Unless this specific intent and/or mental state exists the crime or allegation to which it relates is not committed or is not true"].)

9

Under these instructions, in order to convict appellant of attempted murder as an aider and abettor, the jury necessarily found appellant knew Robles's criminal purpose to kill the occupants of the Gutierrez's car, *and* with the intent of committing, encouraging, or facilitating the attempted murders, appellant aided, promoted, encouraged, or instigated the attempted murders by his own words or conduct. When a jury has been instructed as appellant's jury was, our Supreme Court has declared that " 'the person guilty of attempted murder as an aider and abettor must intend to kill.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 (*Nguyen*), quoting *People v. Lee* (2003) 31 Cal.4th 613, 624; *People v. Gonzalez* (2012) 54 Cal.4th 643, 654, fn. 8.)

The instructions thus required appellant's jury to find that he personally shared the actual shooter's intent to kill. This finding constitutes a finding of express malice, which renders appellant ineligible for section 1172.6 relief as a matter of law. (See *People v. Medrano* (2021) 68 Cal.App.5th 177, 182–183.)

> 3. *The* Langi *decision does not support appellant's argument that the instructions permitted the jury to convict him on a theory of imputed malice*

Appellant's reliance on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*)—which he cites to contend the jury could have convicted him of attempted murder as an aider and abettor without finding he personally acted with malice—is misplaced. In *Langi*, the defendant was convicted of second degree murder as an aider and abettor based on his participation in a fistfight among several people, in which the victim was punched in the face, fell, and hit the back of his head on the

10

sidewalk or curb, resulting in the victim's death. (*Id*. at pp. 975, 976–977.)

On appeal from the summary denial of defendant's section 1172.6 petition, the appellate court determined that the instruction on aiding and abetting (CALJIC No. 3.01) creates an ambiguity in the context of second degree implied malice murder, which may allow the jury to "find the defendant guilty of aiding and abetting second degree murder without finding that he personally acted with malice." (*Langi*, *supra*, 73 Cal.App.5th at p. 982.) The court explained, "The aiding-and-abetting instruction stated that a person aids and abets a crime if he or she acts '*with knowledge of the unlawful purpose of the perpetrator*, and . . . with the intent or purpose of committing or encouraging or facilitating the commission of the crime.' (CALJIC No. 3.01, italics added.) However, . . . the second degree murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death. . . . If the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent. Although the definition of second degree murder in CALJIC No. 8.31 states that the perpetrator must have acted with conscious disregard for human life, the definition of an aider and abettor in CALJIC No. 3.01 does not include the same requirement." (*Id*. at pp. 982–983.) In this situation, the ambiguity in the instructions allows an aider and abettor to be found guilty simply for intending to aid the perpetrator's act, without personally and consciously disregarding the danger to human life. (*Id*. at p. 983.)

*Langi* is inapposite because appellant was not convicted of second degree or implied malice murder, but rather, attempted

11

murder. In contrast to second degree implied malice murder, the perpetrator of an attempted murder must have the specific intent to unlawfully kill another human being. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890 [" 'Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing' "].) Because, as set forth above, an aider and abettor to attempted murder shares the perpetrator's intent to kill, the possibility of imputing malice to an aider and abettor identified in *Langi* is not present where the defendant is convicted of attempted murder as an aider and abettor. (See *Coley*, *supra*, 77 Cal.App.5th at pp. 547–548 [*Langi* inapplicable where attempted murder conviction based on jury instructions requiring intent to kill].)

4. *The isolated phrases appellant picks out of a few instructions did not permit the jury to convict on a theory of imputed malice*

Appellant mixes and matches particular phrases from three instructions—CALJIC No. 3.00 (all principals involved in committing or attempting to commit a crime are "*equally guilty*"), CALJIC No. 8.66 (elements of attempted murder, requiring that the "*person committing the act*" harbor a specific intent to kill), and CALJIC No. 8.67 (elements required to find premeditation for attempted murder referring to the "*would-be slayer*")—to argue that the jury might have convicted appellant as an aider and abettor to attempted murder without finding he had the requisite intent to kill. (Italics added.)

The "equally guilty" language in CALJIC No. 3.00 did not allow the jury to find appellant guilty of attempted murder without considering appellant's own mental state. (See *People v. Johnson* (2016) 62 Cal.4th 600, 638–641 (*Johnson*).) In *Johnson*,

12

our Supreme Court rejected the argument that CALCRIM former No. 400's "equally guilty" language allows a jury to convict an aider and abettor of first degree murder based on the perpetrator's culpability without considering the aider and abettor's own mental state.[4] (*Id.* at pp. 638, 641.) The court held that where the jury was instructed with CALCRIM No. 401 setting forth the requirements for establishing aider and abettor liability,[5] "there was no reasonable likelihood the jurors would have understood the 'equally guilty' language in CALCRIM former No. 400 to allow them to base defendant's liability for first degree murder on the mental state of the actual shooter, rather than on defendant's own mental state in aiding and abetting the killing." (*Id.* at p. 641; *People v. Estrada* (2022) 77 Cal.App.5th 941, 947.)

For the same reason, appellant's reliance on *People v. Samaniego* (2009) 172 Cal.App.4th 1148 is misplaced. There, the court found the "equally guilty" language in CALCRIM No. 400 "generally correct in all but the most exceptional circumstances," but "misleading as applied to the unique circumstances" of that

---

[4] CALCRIM former No. 400 provided in part: " 'A person is *equally guilty* of the crime whether he committed it personally or aided and abetted the perpetrator who committed it.' (See CALCRIM No. 400 (Aug. 2009), italics added.)" (*Johnson, supra,* 62 Cal.4th at p. 638.)

[5] Like CALJIC No. 3.01, CALCRIM No. 401 instructs that in order to find a defendant guilty as an aider and abettor, the jury must find the defendant knew of the perpetrator's unlawful purpose, and, by words or conduct and with the intent to aid and abet the perpetrator in committing the crime, did in fact aid and abet the perpetrator's commission of that crime.

13

case. (*Id.* at p. 1165.) Nevertheless, the court went on to conclude that any instructional error was harmless because "the jury necessarily resolved [the issue of the mental states for murder] against [defendants] under other instructions." (*Ibid.*) Specifically, because the jury was instructed with CALCRIM No. 401, it necessarily found the defendants guilty as aiders and abettors who acted deliberately and with premeditation. (*Id.* at pp. 1165–1166 ["It would be virtually impossible for a person to know of another's intent to murder and decide to aid in accomplishing the crime without at least a brief period of deliberation and premeditation, which is all that is required"].)

Finally, appellant argues that the instructions failed to differentiate between the actual killer and the aider and abettor in defining malice because references to "The person committing the act" in CALJIC No. 8.66 and the "would-be slayer" in CALJIC No. 8.67 allowed the jury to simply impute Robles's mental state to appellant. The argument lacks merit.

First, there is no ambiguity in CALJIC No. 8.66. The phrase "The person committing the act" in CALJIC No. 8.66 clearly refers to the *perpetrator*, in this case Robles, the actual shooter. Appellant does not contend otherwise, nor does he articulate how this phrase might lead a jury to impute malice to another person who was not "The person committing the act" in light of the other instructions given.

Next, in arguing the "would-be slayer" language in CALJIC No. 8.67 caused the jury to impute malice, appellant ignores the preamble to the instruction, which requires the jury to find the defendant guilty of attempted murder *before* considering the truth of the allegation "that the crime attempted was willful,

14

deliberate, and premeditated murder."**6**  Thus, the jury had already determined that appellant shared Robles's intent to kill and was guilty as an aider and abettor of attempted murder when it considered whether the crime was willful, deliberate, and premeditated.  CALJIC No. 8.67 does not concern the requisite intent or mental state for conviction of attempted murder, and assuming, as we must, that appellant's jury understood and followed the instructions given, it had no bearing on the jury's underlying determination of appellant's guilt on the attempted murder charges.  (*People v. Buenrostro* (2018) 6 Cal.5th 367, 431 ["We presume jurors understand and follow the instructions they are given, including the written instructions"].)

Even assuming the instruction did not require the jury to find appellant personally premeditated the crime in order to find the allegation true, our conclusion regarding appellant's ineligibility for section 1172.6 relief would not change.  Section 1172.6 relief is available only to a defendant convicted under a theory of imputed *malice*, not imputed *premeditation*.  As set forth above, according to the instructions given in this case, in order to convict appellant of attempted murder as an aider and abettor, the jury was required to find that appellant shared Robles's specific intent to kill.  (*Nguyen*, *supra*, 61 Cal.4th at p. 1054.)

---

**6** The first paragraph of CALJIC No. 8.67 provides:  "It is also alleged in Counts I, II, and III that the crime attempted was willful, deliberate, and premeditated murder.  If you find the defendant guilty of attempted murder, you must determine whether this allegation is true or not true."

15

## DISPOSITION

The order denying appellant's petition for resentencing under Penal Code section 1172.6 is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.

16